■ In the Matter of the COUNTY OF NASSAU, Respondent, Relative to Acquiring Title to Real Property, Known as COW MEADOW, TOWN OF HEMPSTEAD. ISIDORE COHEN, Appellant.— In a condemnation proceeding, a claimant appeals from a final decree of the Supreme Court, Nassau County, entered March 22, 1974, which awarded him $191,100, after a hearing. Decree modified, on the law and the facts, by striking from the tabular abstract appended thereto the figures "65%", "$354,900" and "$191,100" and substituting therefor, respectively, the figures "25%", "$136,500" and "$409,500". As so modified, decree affirmed, with costs to appellant. The claimant was the owner of a 7.161-acre parcel, located on a peninsula, at the foot of South Main Street, just outside the limits of the Village of Freeport, in the Town of Hempstead. The County of Nassau condemned the land, title vesting on September 21, 1964. From 1950 until the date of vesting, the property was located in an industrial zone and was used as a junkyard. Since 1951, such use had been nonconforming, as the town amended its zoning ordinance that year to prohibit the maintenance of junkyards in industrial districts. In a prior decree herein, made in 1967, Special Term (Hogan, J.) awarded the claimant $146,400, finding that the property should be valued as filled and ready for development

for single-family homes and that a premium of 20% should be added for the "premature extinguishment of the nonconforming use." We reversed that decree and remanded the proceeding to Special Term for further proof and a new determination, holding that Special Term had adopted an improper valuation method in treating the junkyard use as a noncompensable business and that any lessening of the value of the land as a nonconforming junkyard by reason of town board action to terminate such use must be based upon evidence that the change was reasonably probable (*Matter of County of Nassau* [*Cohen*], 34 A D 2d 412). The instant award of $191,100 was premised upon a finding that the highest and best use of the property was as zoned and used (industrial — junkyard), being thus worth $546,000, but that there was a reasonable probability of a change in zone (to residential) and termination of the nonconforming use in 10 years, resulting in a reduction in value of 65%, or a net value of $191,100. Although the record does, in our view, support the existence of a possible or even a reasonably probable change of zone and use in the future, it does not sustain a finding that such change will come about in 10 years, thus warranting a 65% reduction in value. The county set out to prove both a reasonably probable rezoning and a termination of the non-conforming use because the town's building zone ordinance provided for the termination of junkyard uses only in residential districts, by means of a three-year amortization provision (art. 14, § G-3.0), and it was conceded that the town would not seek to abolish such uses in industrial districts. The evidence proffered by the county was, to some extent, conflicting. Thus, for example, in the early 1960's, the village opposed further residential development of this area because of the increased burden upon its schools and public services, and the town board apparently rejected a proposal for this very change in zone. On the other hand, the late 1950's and early 1960's did see much of the vacant land on this peninsula, as well as others on the South Shore, filled in by residential development; the land immediately adjacent to the north of the subject site was residentially developed; and the industrial zoning of a huge parcel to the immediate south of the subject site, the Horn property, had been declared confiscatory (*Horn Constr. Co.* v. *Town of Hempstead*, 41 Misc 2d 438). Under the circumstances of this case it cannot be stated with any measure of confidence that the rezoning and admittedly time-consuming process of termination of the junkyard use pursuant to the amortization ordinance will occur within 10 years. Rather, we believe that a willing and knowledgeable buyer in 1964 would have discounted no more than 25% from the value of the site as then zoned and used to cover any reasonably probable rezoning and termination of use. Martuscello, Acting P. J., Latham, Benjamin, Munder and Shapiro, JJ., concur.